IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS W. McCLAIN,

        Plaintiff,                 No. CIV S-10-1197 GGH

    vs.

MICHAEL J. ASTRUE,            ORDER
Commissioner of
Social Security,

        Defendant.

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, Plaintiff's Motion for Summary Judgment is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and the Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born August 30, 1955, applied on February 5, 2007 for disability benefits. (Tr. at 8, 37.) Plaintiff alleged that, as of June 1, 2006, he was unable to work due to a heart condition, sleep apnea, foot pain, hand pain, diabetes mellitus, shoulder pain, and depression . (Tr. at 14, 125.) In a decision dated February 24, 2009, ALJ Mark C. Ramsey

1

1  determined that plaintiff was not disabled.  The ALJ made the following findings:[1]

2          1.      The claimant meets the insured status requirements of the
                   Social Security Act through December 31, 2011.

3          2.      The claimant has not engaged in substantial gainful activity
                   since June 1, 2006, the alleged onset date (20 CFR
                   404.1571 *et seq.*, and 416.971 *et seq.).*

4          3.      The claimant has the following severe impairments:
                   diabetes mellitus; coronary artery disease, inferior
                   myocardial infarction in 2001, status post stent placement;
                   right shoulder pain secondary to status postoperative open
                   reduction and internal fixation of the right shoulder
                   glenoid; and obesity.  (20 CFR 404.1521 *et seq.* and
                   416.921 *et seq.*).

5          4.      The claimant does not have an impairment or combination
                   of impairments that meets or medically equals one of the
                   listed impairments in 20 CFR Part 404, Subpart P,
                   Appendix 1 (20 CFR 404.1525, 404.1526, 404.925 and

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to
disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
           Step one:  Is the claimant engaging in substantial gainful
activity?  If so, the claimant is found not disabled.  If not, proceed
to step two.
           Step two:  Does the claimant have a "severe" impairment?
If so, proceed to step three.  If not, then a finding of not disabled is
appropriate.
           Step three:  Does the claimant's impairment or combination
of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
404, Subpt. P, App.1?  If so, the claimant is automatically
determined disabled.  If not, proceed to step four.
           Step four:  Is the claimant capable of performing his past
work?  If so, the claimant is not disabled.  If not, proceed to step
five.
           Step five:  Does the claimant have the residual functional
capacity to perform any other work?  If so, the claimant is not
disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
     The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
burden if the sequential evaluation process proceeds to step five.  Id.

1        416.926).

2     5.        After careful consideration of the entire record, the
               undersigned finds that the claimant has the residual
3              functional capacity to light work as defined in 20 CFR
               404.1567(b) and 416.967(b) except that he is limited to
4              occasional over head reaching on the right.

5     6.        The claimant is unable to perform any past relevant work
               (20 CFR 404.1565 and 416.965).
6
      7.        The claimant was born on August 30, 1955 and was 50
7              years old, which is defined as an individual closely
               approaching advanced age, on the alleged disability onsent
8              date (20 CFR 404.1563 and 416.963).

9     8.        The claimant has at least a high school education and is
               able to communicate in English (20 CFR 404.1564 and
10             416.964).

11    9.        Transferability of job skills is not material to the
               determination of disability because using the Medical-
12             Vocational Rules as a framework supports a finding that the
               claimant is "not disabled," whether or not the claimant has
13             transferable job skills (See SSR 82-41 and 20 CFR Part
               404, Subpart P, Appendix 2).
14
      10.       Considering the claimant's age, education, work
15             experience, and residual functional capacity, there are jobs
               that exist in significant numbers in the national economy
16             that the claimant can perform (20 CFR 404.1569,
               404.1569a, 416.969, and 416.969a).
17
      11.       The claimant has not been under a disability, as defined in
18             the Social Security Act, from June 1, 2006 through the date
               of this decision (20 CFR 404.1520(g) and 416.920(g)).
19    12.

20   (Tr. at 11-17.)

21   ISSUES PRESENTED

22         Plaintiff has raised the following issues: A. Whether the Appeals Council Failed

23   to Properly Evaluate New and Material Evidence; B. Whether the ALJ Failed to Properly Credit

24   Plaintiff's Testimony and Third Party Statements Regarding Plaintiff's Functional Limitations;

25   and C.  Whether the ALJ Erred in Utilizing the Grids Instead of a Vocational Expert.

26   ////

                                          3

1    LEGAL STANDARDS

2          The court reviews the Commissioner's decision to determine whether (1) it is

3    based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

4    the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

5    Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

6    Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

7    as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

8    625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

9    ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

10   resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

11   omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

12   than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

13   ANALYSIS

14         A.  Whether the Appeals Council Failed to Properly Evaluate New and Material Evidence

15               Plaintiff claims that the Appeals Council (hereinafter "Council") failed to take

16   into account "new and material" evidence of his carpal tunnel syndrome and worsening shoulder

17   pain, specifically medical records from Shasta Orthopedics dated January 28, 2009 through

18   March 5, 2009.  (See Tr. at 4.)  Plaintiff avers that these records were "not available to the ALJ,"

19   who conducted a hearing on plaintiff's application on January 30, 2009 and ultimately found that

20   plaintiff's claims of numbness in his hands and worsening shoulder pain were not supported by

21   medical evidence.  (Tr. at 15.)   In appealing the ALJ's decision, plaintiff submitted these new

22   records to the Council.  In its March 18, 2010 decision, the Council stated that it had considered

23   the additional evidence and "found that the information does not provide a basis for changing the

24   [ALJ's] decision."  (Tr. at 1-2.)  Plaintiff complains that the Council provided no reason for this

25   determination, and that the decision was erroneous.  Plaintiff argues that the Council "should

26   have afforded the ALJ an opportunity to evaluate the new evidence – evidence which specifically

4

1    addressed the ALJ's stated concerns."  (Plaintiff's Mem. of P. & A. in Supp. of Mot. at 14.)

2            Because the Commissioner does not contest whether the evidence submitted to the

3    Appeals Council should be considered by this court, based on Ramirez v. Shalala, 8 F.3d 1449,

4    1452 (9th Cir. 1993), this new evidence will become part of the record on review, even though

5    that evidence was never before the ALJ.  "We properly may consider the additional materials

6    because the Appeals Council addressed them in the context of denying Appellant's request for

7    review." Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.2000).

8            "Social Security claimants usually have one opportunity to prove their disability.

9    If this were not the case, the administrative proceedings would become an unending

10   merry-go-round." Nehlig v. Commissioner of Social Security Admin., 40 F. Supp. 2d 841, 848

11   (E.D.Tex. 1999).  A federal district court nevertheless should remand a case to the Commissioner

12   to consider material new evidence if good cause exists for its absence from the prior record.  42

13   U.S.C. § 405(g); Burton v. Heckler, 724 F.2d 1415, 1417 (9th Cir. 1984).

14           New evidence is "material," if the court finds a reasonable possibility that

15   considering the evidence would have changed the disability determination.[2] See Booz v.

16   Secretary of Health and Human Services, 734 F.2d 1378, 1380-1381 (9th Cir. 1984).  Unless it is

17   probative of plaintiff's condition at or before the disability hearing, new evidence is not material.

18   See 42 U.S.C. § 416(i)(2)(G); Sanchez v. Secretary of Health and Human Services, 812 F.2d

19   509, 511-12 (9th Cir. 1987) (holding that new evidence was not material because it related to a

20   medical condition not significantly at issue at time of hearing).[3]

21           "Good cause" requires more than "simply . . . obtaining a more favorable report

22   from an expert witness once [a] claim is denied.  The claimant must establish good cause for not

23
24        [2] Evidence is not deemed immaterial solely by the date it was created.  Later dated
     evidence may have substantive impact on a preceding period.

25        [3] When new evidence reflects plaintiff's current condition but is not probative of a
     condition at the time of the initial determination, the correct procedure is to reapply for benefits.
26   See Ward v. Schweiker,  686 F.2d 762, 765-66 (9th Cir.1982).

1  seeking the expert's opinion prior to the denial. . . ."  <u>Clem v. Sullivan</u>, 894 F.2d 328, 332 (9th

2  Cir. 1990) (citing <u>Key v. Heckler</u>, 754 F.2d 1545, 1551 (9th Cir.1985)).  For example, good

3  cause exists if new evidence earlier was unavailable, in the sense that it could not have been

4  obtained earlier.  <u>Embrey v. Bowen</u>, 849 F.2d 418, 423-24 (9th Cir.1988).

5              The new evidence here consists of the following medical records from Shasta

6  Orthopedics:

7  •       A January 28, 2008 report assessing plaintiff with mild degenerative joint disease

8          ("DJD") of the right shoulder A/C joint, partial thickness tear of rotator cuff tendon in the

9          right shoulder, subacromial impingement syndrome of the right shoulder, and possible

10         labral tear of the right shoulder.  The treatment plan stated in its entirety: "The plaintiff is

11         to avoid any activity that precipitates his pain."  (Tr. at 371.)

12 •       A February 10, 2009 report stating that plaintiff feels pain in his right shoulder frequently

13         (75% of the time), and determining from examination of plaintiff's right hand: "mild

14         tendernous to palpatation over thethenar muscles.  Hand range of motion is good.

15         Phalen's test is positive elicits tingling in the thumb." Impressions included DJD in the

16         right shoulder and Carpal Tunnel Syndrome in the right hand.  The treatment plan stated

17         merely: "Activity as tolerated with respect to the shoulder."  (Tr. at 368.)

18 •       A February 4, 2008 report based on an MRI of plaintiff's right shoulder.  Findings were

19         generally unremarkable.  (Tr. at 365.)

20 •       A report of a Feruary 26, 2008 nerve conduction study, dicussed below.  (Tr. at 362.)

21 •       A March 5, 2009 report noting that the nerve conduction study showed "median nerve

22         involvement of the right hand and guyon canal ulnar nerve compression.  Motor nerve

23         involvement - right side.  Left side mild to moderate median motor nerve involvement."

24         Impressions included a labral tear in the right shoulder and Carpal Tunnel Syndrome in

25         the right wrist.  The prescribed treatment plan was to "avoid any activity that precipitates

26         his pain."  (Tr. at 359.)

6

1    The undersigned concludes that this evidence adds little to the record of plaintiff's

2 shoulder problems as presented to the ALJ (discussed infra), therefore such evidence is not

3 material and may be disregarded.  As to plaintiff's Carpal Tunnel Syndrome, apparently noted

4 for the first time in February 2009, plaintiff reportedly stated in January 2009 that his condition

5 had "worsened in the last 3 months." (Tr. at 370).  Any such recent deterioration would not be

6 probative of a disability at the time of plaintiff's disability hearing because it would not meet the

7 twelve-month durational requirement. See 42 U.S.C. §§ 404.1509, 416. 909 (the impairment

8 must be one which can be expected to result in death or which has lasted or can be expected to

9 last for a continuous period of not less than 12 months); DeLorme v. Sullivan, 924 F.2d 841,

10 846-847 (9th Cir. 1991) ("an independent review of the record does not clearly demonstrate a

11 twelve-month period during with DeLorme experienced a significant limitation of motion in the

12 spine.  Therefore, there is no twelve-month period in the record during which all the criteria in

13 the Listing of Impairments are met.").  Thus, new evidence of plaintiff's Carpal Tunnel

14 Syndrome is also immaterial and does not warrant reconsideration by the ALJ.

15    B.   Whether the ALJ Failed to Properly Credit Plaintiff's Testimony and Third Party

16 Statements Regarding Plaintiff's Functional Limitations

17    Plaintiff alleges that the ALJ discredited his testimony regarding his pain and

18 functional limitations for three improper reasons.  First, plaintiff contends that the ALJ

19 incorrectly found that Naproxen and Ibuprofen were not medications associated with chronic

20 pain.  Second, plaintiff contends that the ALJ mistakenly stated that plaintiff stopped working

21 due to a change in residence from California to Idaho, and not due to disabling impairments.

22 Plaintiff also contends that the ALJ mischaracterized his and his former wife's testimony about

23 his ability to perform daily activities.  (Plaintiff's Mem. of P. & A. In Supp. of Mot. at 15-19.)

24    The ALJ determines whether a disability applicant is credible, and the court defers

25 to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

26 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

7

1  credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

2  Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

3  supported by "a specific, cogent reason for the disbelief").

4          In evaluating whether subjective complaints are credible, the ALJ should first

5  consider objective medical evidence and then consider other factors.  Vasquez v. Astrue, 547

6  F.3d 1101 (9th Cir. 2008);  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).  The

7  ALJ may not find subjective complaints incredible solely because objective medical evidence

8  does not quantify them.  Bunnell at 345-46.  If the record contains objective medical evidence of

9  an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged

10 symptoms, including aggravating factors, medication, treatment, and functional restrictions.  See

11 id. at 345-47.  The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior

12 inconsistent statements; (2) unexplained or inadequately explained failure to seek treatment or to

13 follow a prescribed course of treatment; and (3) daily activities.[4]  Smolen v. Chater, 80 F.3d

14 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR

15 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity,

16 and effect of symptoms, and inconsistencies between testimony and conduct, may also be

17 relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ

18 may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453,

19 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900

20 F.2d 172, 177, n.6 (9th Cir. 1990).  Plaintiff is required to show only that her impairment "could

21 reasonably have caused some degree of the symptom."  Vasquez, 547 F.3d at 1104, *quoting*

22 Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007, Smolen, 80 F.3d at 1282.  Absent

23

24          [4] Daily activities which consume a substantial part of an applicants day are relevant.
   "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily

25 activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in
   any way detract from her credibility as to her overall disability.  One does not need to be utterly

26 incapacitated in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001)
   (quotation and citation omitted).

1   affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

2   must be clear and convincing, and supported by reference to specific facts in the record.

3   Vasquez, 547 F.3d at 1104-05.

4           Here, the ALJ found that plaintiff's "statements concerning the intensity,

5   persistence and limiting effects" of his symptoms were not entirely credible, and that plaintiff

6   was "not limited by incapacitating pain or limitation for performing light work."  (Tr. at 14, 16.)

7   The ALJ continued: "The record shows that the claimant has been prescribed anti-inflammatory

8   medication (Naproxen), and he testified that he uses Ibuprofen for pain symptoms.  However

9   these are not the types of medications associated with chronic pain."  (Id. at 16.)

10          Plaintiff asserts that both of these medications are used to treat chronic pain.  In

11  support, plaintiff cites statements from the National Institute of Health (NIH) and WebMD.com

12  to the effect that Naproxen is used to treat shoulder pain caused by bursitis, tendinitis, and gouty

13  arthritis; and Ibuprofen is used to treat muscle aches, backaches, and arthritis.  (Plaintiff's Mem.

14  of P. & A. In Supp. of Mot. at 16.)

15          In fact, both medications can be used to treat either chronic or non-chronic pain.

16  See NIH, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (last visited July 19,

17  2011) (Narproxen can be used to "reduce fever and to relieve mild pain from headaches, muscle

18  aches, arthritis, menstrual periods, the common cold, toothaches, and backaches."); WebMd.com,

19  http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (last visited July 19, 2011)

20  ("Ibuprofen is used for the short-term treatment of mild to moderate pain in adults.")  Here, the

21  ALJ could reasonably conclude from the record and testimony that plaintiff's use of these

22  medications was for non-chronic shoulder pain, or for pain exacerbated by certain avoidable

23  movements.  A December 2007 treatment record by Dr. B.V. Chandramouli notes that plaintiff

24  was taking Naproxen as needed, but makes no mention of his shoulder pain.  (Tr. at 311.)  A May

25  2009 treatment record from Shasta Community Health Center indicates that plaintiff was

26  prescribed a 500 mg dose of Naproxen as needed, apparently in connection with reported pain in

his right shoulder "when reaching over his head" and lifting anything over five pounds.  (Tr. at 324.)  By the time plaintiff testified before the ALJ in January 2009, he was taking only over-the-counter Ibuprofen for his shoulder pain.  (Tr. at 50.)  The ALJ  noted that plaintiff "has not sought intense, ongoing treatment to help reduce his [pain] symptoms" and there was no indication that plaintiff's pain medication or treatment program had changed.  (Tr. at 15.)  Based on the foregoing, the ALJ could reasonably find that plaintiff's sometime use of Naproxen and Ibuprofen was inconsistent with his claims of "continual pain . . . [a] 6 [or] 7" on a scale of 10. (Tr. at 52-53.)  See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (plaintiff's claim of extreme pain inconsistent with "minimal, conservative treatment" received); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ correctly considered conservative nature of treatment in determining credibility).  To the extent that the ALJ's report suggests that Naproxen and Ibuprofen are never used to treat chronic pain, it is harmless error that did not affect the ultimate decision.  See Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990).  In all probability and judging from the ALJ's entire decision, the ALJ meant to say that Naproxen is not used for severe, chronic pain.

Plaintiff also takes issue with the following statement by the ALJ: "[T]he claimant reported that he stopped working on May 31, 2006, due to a change in residence from California to Idaho, and not due to disabling impairments, which detracts from his credibility."  (Tr. at 16.) Plaintiff asserts that he was "forthright in testifying that he stopped working because he moved to Idaho" but that by August 2006 could no longer do light work due to continual pain in his shoulder.  (Plaintiff's Mem. of P. & A. In Supp. of Mot.  at 16-17.)  However, in his application for social security benefits, plaintiff answered questions about the onset of his disability as follows:

> D. When did your illnesses, injuries, or conditions first interfere with your ability to work?
>
> 06/01/2006

1          E. When did you become unable to work because of your illnesses,
              injuries, or conditions?

2
           06/01/2006
3

4    (Tr. at 125.)  These answers are inconsistent with plaintiff's statements to the ALJ that he

5    stopped working on June 1, 2006 because he moved to Idaho with his wife.  (Tr. at 40-41.)

6    Moreover, plaintiff's testimony to the ALJ suggested that, once in Idaho, he made virtually no

7    effort to find light work that did not require lifting.  (Tr. at 42.)  Based on these statements, the

8    ALJ could properly find that plaintiff's claim of being disabled as of June 2006 lacked

9    credibility.[5]

10         Next, plaintiff alleges that the ALJ did not render a complete or accurate

11   description of his ability to perform daily activities in the following statement:

12             Significantly, claimant and third party statements in the record note
               that the claimant engages in a wide range of daily activities that are
13             incompatible with the presence of a disabling level of pain or
               limitation.  These statements report that the claimant prepares
14             simple meals daily, does vacuuming and laundry, and sometimes
               mows the lawn at his own pace.  He feeds his pet and walks his
15             dog.  He spends time with others and goes out to eat weekly.  He
               has no problems getting along with authority figures.  He goes out
16             independently.  The record shows that the claimant watches
               television and plays games on the computer.  He enjoys building
17             models.  He shops weekly and is able to count change. [Record
               citations omitted.] These activities do not support the degree of
18             limitation, fatigue, pain or mental limitation alleged by the
               claimant.
19

20   (Tr. at 16.)

21         Having carefully reviewed the record, the undersigned concludes that the ALJ

22   accurately summarized plaintiff's reports of his daily activities, given that plaintiff's statements

23   were somewhat inconsistent and the ALJ was not required to comprehensively document them.

24   In a disability questionnaire plaintiff filled out in August 2007, he described his daily activities as

25   _____

26       [5]  That is, the inference drawn by the ALJ is legitimate, although such is not the inference
     the undersigned may have drawn.

                                        11

1   follows:

2           I get up and eat[,] watch TV or play games on computer[;] one day
        a week I vacuum the living room, or [do] laundry, eat lunch[,]
3       watch TV then in the evening if it's not hot I might start mowing.  I
        usually have to take a few breaks to get it done.
4

5   (Tr. at 147; see id. at 150 (vacuuming, laundry)).  Other parts of plaintiff's stated daily routine

6   included feeding, walking, and playing with his dog.  (Id. at 148-150.)  As to cooking, plaintiff

7   stated that he made sandwiches and used the microwave but "no longer cook on the stove

8   because I forget what I'm doing[.]" (Id. at 150.)  He stated that he shopped for food once a week,

9   but that his wife paid the bills because he forgot "to add and subtract deposits." (Id. at 151.)

10  Plaintiff's stated hobbies included building models and fishing.  (Id. at 152.)  These statements

11  provide record support for many of the ALJ's findings as described above.

12          In testimony before the ALJ in January 2009, plaintiff confirmed that, when he

13  lived in Idaho, and after the alleged onset date of his disability on June 1, 2006, he vacuumed,

14  mowed the lawn, walked the dog, and went fishing.  (Tr. at 48-49.)  Plaintiff also testified that he

15  currently rode his motorcycle "a couple times a week" for "maybe an hour" and walked for

16  twenty or thirty minutes a day.  (Id. at 46.)  Notwithstanding plaintiff's testimony that he no

17  longer engaged in some of these activities (e.g., vacuuming, mowing) as of January 2009, the

18  ALJ had sufficient record support for his finding that plaintiff "engages in a wide range of daily

19  activities that are incompatible with the presence of a disabling level of pain or limitation." (Tr.

20  at 16, 44-45.)  In sum, the ALJ properly analyzed the evidence in relation to the appropriate

21  factors required by the Bunnell line of cases.

22          Plaintiff also alleges that the ALJ improperly disregarded the third-party testimony

23  [here a written form] of plaintiff's former wife, Mary McClain, concerning plaintiff's pain and

24  functional limitations.  Rather than specifically identifying or summarizing Ms. McClain's

25  statements, plaintiff claims, the ALJ lumped together "claimant and third party statements" about

26  plaintiff's daily activities, and found that they did not support the degree of limitation claimed by

12

1  plaintiff.  (Plaintiff's Mem. of P. & A. In Supp. of Mot. at 19-21.)

2         An ALJ is required to "consider observations by non-medical sources as to how

3  an impairment affects a claimant's ability to work."  Sprague v. Bowen, 812 F.2d 1226, 1232

4  (9th Cir. 1987).  "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ

5  must take into account, unless he or she expressly determines to disregard such testimony and

6  gives reasons germane to each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

7  2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  Similar to the ALJ's role

8  in evaluating the testimony of a claimant, when evaluating the testimony of a lay witness "[t]he

9  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for

10  resolving ambiguities."  Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998) (quoting

11  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

12         The Ninth Circuit has held that the ALJ must properly discuss lay witness

13  testimony, and that any failure to do so is not harmless unless no reasonable ALJ, when fully

14  crediting the testimony, could have come to a different disability determination.  Stout v.

15  Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006).

16         Having reviewed the questionnaire completed by Ms. McClain in August 2007

17  concerning plaintiff's ability to function, the undersigned concludes that the ALJ largely credited

18  Ms. McClain's statements and incorporated them into his findings.  (Tr. at 16, 157-165.)  In her

19  report, Ms. McClain confirmed that plaintiff's household chores included vacuuming, doing

20  laundry and mowing the yard, all on a weekly basis (id. at 159), and further stated that he went

21  outside every day and could drive and go out alone.  (Id. at 160).  She confirmed that his hobbies

22  included "building models, fishing, watching TV, and [using the] computer," although he

23  experienced some difficulty  building models due to "his hands" and "fishing distance is a

24  problem."  (Id. at 161.)  Ms. McClain stated that her husband engaged in social activities once a

25  week, but "sometimes" needed someone to accompany him.  (Id.)  She stated that plaintiff got

26  along with authority figures "very well."  (Id. at 162.)  Overall, her description of plaintiff tended

to confirm his self-description in August 2007 as one who was able to perform a wide range of ordinary tasks.

Plaintiff points out that the ALJ made no mention of Ms. McClain's indication, by circling terms provided on the questionnaire, that plaintiff's "illness, injuries, or conditions" affected the following activities: lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair-climbing, using hands, completing tasks, and concentration. (Tr. at 162.) Certainly, in light of the corroborating medical evidence of plaintiff's ongoing shoulder pain, the ALJ acknowledged that "reaching" posed problems for plaintiff, and tailored his findings accordingly. (Tr. at 14, 16.) Moreover, the mere circling of an activity that may be "affect[ed]" by plaintiff's "illness, injuries or conditions", Tr. 162, say nothing about the degree to which they are affected–hardly at all, moderately, severely, etc. The part of the explanation which asks "how" qualifies the circles, somewhat, but in this case did not detract from the ALJ's analysis to the extent the descriptions can be understood. Other problems that Ms. McClain reported, including plaintiff's difficulties with concentration and using his hands, added little to plaintiff's own report in August 2007 and his testimony before the ALJ in January 2009. (Tr. at 51, 55.)

However, in determining that plaintiff had the residual functional capacity to do "light work," which by definition may include "a good deal of walking or standing" or "sitting most of the time," the ALJ implicitly disregarded Ms. McClain's vague, general statement that plaintiff's condition impacted his ability to stand, walk, and sit. 20 CFR § 404.1567(b).[6] The

---

[6] 20 CFR 404.1567(b) provides:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine

14

ALJ did not provide specific reasons for rejecting this testimony, assuming that eh needed to do so for such an undescriptive statement.. Thus, under <u>Stout</u>, <u>supra</u>, the question is whether the ALJ's error was harmless, because "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." 454 F.3d at 1056.  The undersigned concludes that even if the ALJ had fully credited Ms. McClain's statements that plaintiff had difficulties sitting, standing, and walking (to an unknown degree), the countervailing medical evidence would have guided the decision of any "reasonable ALJ" and resulted in the same disability determination.  In March 2006, a physical therapy report stated that plaintiff "reports minimal pain while at rest" but significant pain in movement, which sharply "increase[d] with attempting to use his arm either out to the front or to the side."  (<u>Id.</u> at 223.)  In June 2007, non-examining state agency physician Dr. Ward Dickey reported that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday.  (Tr. at 236.)  Dr. Dickey concluded: "Alleged limitations are not fully consistent with the objective findings. [Plaintiff] is found partially credible."  (<u>Id.</u> at 240.)  On September 11, 2007, Dr. Thomas Coolidge affirmed Dr. Dickey's assessment.  (<u>Id.</u> at 292.)  A December 28, 2007 medical report by Dr. B. V. Chandramouli noted that plaintiff was "comfortable at rest" and "[g]enerally can walk up to 1/2-3/4 of a mile slowly on flat ground[,]" though he "continues to have exertional fatigue, tiredness & tightness."  (<u>Id.</u> at 311.)  None of these reports, nor any other medical evidence in the record, suggest that plaintiff was unable to sit, stand, or walk in the course of "light work"; rather, they suggest that plaintiff had certain medical problems but was not fully credible concerning the extent of his limitations.  Thus he undersigned concludes that the ALJ committed harmless error in failing to explicitly reject certain of Ms. McClain's statements.

---

dexterity or inability to sit for long periods of time.

1      C.  Whether the ALJ Erred in Utilizing the Grids Instead of a Vocational Expert

2           Plaintiff contends that the ALJ should have utilized a vocational expert because

3 the Guidelines in table form ("grids") "could not, by definition, accurately describe [his] non-

4 exertional limitations."  (Plaintiff's Mem. of P. & A. In Supp. of Mot. at 22.)  Plaintiff claims

5 that these non-exertional limitations included "manipulative limitations due to daily numbness

6 and tingling in hands, inability to complete tasks, stress and heart palpitations, and severe pain

7 with any activity or position that put pressure on his right shoulder – like sitting while leaning

8 toward to the right[,]" as well as chronic pain and limitations in plaintiff's ability to lift and carry.

9 ( Id. at 21-22.)

10           The grids are combinations of residual functional capacity, age, education, and

11 work experience.  At the fifth step of the sequential analysis, the grids determine if other work is

12 available.  See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573,

13 577-78 (9th Cir. 1988) (Pregerson, J., concurring).  The grids may be used if a claimant has both

14 exertional and nonexertional limitations, so long as the nonexertional limitations do not

15 significantly impact the exertional capabilities.[7]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir.

16 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc).

17 The ALJ, however, is not automatically required to deviate from the grids whenever plaintiff has

18 alleged a nonexertional limitation.  Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional

19 limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt.

20 404, subpt. P, app. 2, § 200.00(e)(2) (1996).  The ALJ must weigh the evidence with respect to

21

22      [7]  Exertional capabilities are the "primary strength activities" of sitting, standing, walking,
23 lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary;
Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).  Non-exertional activities include
24 mental, sensory, postural, manipulative and environmental matters which do not directly affect
the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper,
25 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has
an impairment that limits his or her ability to work without directly affecting his or her strength,
26 the claimant is said to have nonexertional (not strength-related) limitations that are not covered
by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

1  work experience, education, and psychological and physical impairments to determine whether a

2  nonexertional limitation significantly limits plaintiff's ability to work in a certain category.

3  Desrosiers 846 F.2d at 578 (Pregerson, J., concurring).  "A non-exertional impairment, if

4  sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the

5  guidelines.  In such a case, the guidelines would be inapplicable."  Desrosiers, 846 F.2d at

6  577-78.  The ALJ is then required to use a vocational expert. Aukland v. Massanari, 257  F. 3d.

7  1033 (9th Cir. 2001).

8          Here, the record before the ALJ indicated that, after the alleged onset date of his

9  disability, plaintiff was able to engage in many ordinary activities, notwithstanding occasional

10 heart palpitations and pain associated with movements involving his right shoulder.  While

11 plaintiff's motion characterizes such pain as "severe," plaintiff in testimony stated that he was

12 "not taking anything other than [over-the-counter] Ibuprofen for it now."  (Tr. at 50.)  As

13 discussed above, the ALJ could have concluded from the lack of aggressive pain treatment that

14 plaintiff's shoulder pain was not a significant non-exertional impairment, particularly if plaintiff

15 was "limited to occasional over head reaching on the right." (Id. at 14.)  No medical evidence

16 before the ALJ suggested that plaintiff's "inability to complete tasks" and "stress" were

17 significant impairments. As to plaintiff's problems with tingling and numbness in his hands,

18 plaintiff was not diagnosed with possible Carpal Tunnel Syndrome until February 2009 (id. at

19 362), after his hearing before the ALJ.  Although plaintiff testified about hand problems at his

20 hearing (id. at 51, 55), the ALJ could properly consider Dr. Dickey's 2007 conclusion (later

21 affirmed by Dr. Coolidge) that plaintiff was not fully credible concerning his alleged limitations.

22 (Id. at 240, 292.)  Moreover, as discussed above, no medical evidence suggested that plaintiff's

23 Carpal Tunnel Syndrome had lasted or was expected to last for a period of twelve months.

24 Finally, limitations plaintiff's ability to lift and carry are more accurately characterized as

25 exertional limitations.  See fn. 6, supra.   In sum, lacking evidence of significant non-exertional

26 impairments, the ALJ did not err in utilizing the grids.

1  CONCLUSION

2          The court finds the ALJ's assessment is fully supported by substantial evidence in

3  the record and based on the proper legal standards.  Accordingly, plaintiff's Motion for Summary

4  Judgment (Doc. #20) is DENIED, the Commissioner's Cross Motion for Summary Judgment

5  (Doc. #21) is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

6  DATED: August 22, 2011

7                                               /s/ Gregory G. Hollows
                                         UNITED STATES MAGISTRATE JUDGE
8
   McClain1197.ss.wpd / GGH:14
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26